J-A26033-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　　:　　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　　　　:　　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
SADEEN JONES　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Appellant　　　　　　:　　No. 3284 EDA 2019

Appeal from the Judgment of Sentence Entered May 23, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0000806-2018

BEFORE:　BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:　　　　　　**FILED NOVEMBER 06, 2020**

Appellant, Sadeen Jones, appeals from the judgment of sentence entered in the Court of Common Pleas of Bucks County after a jury convicted him of, *inter alia*, robbery, burglary, and conspiracy committed in connection with an armed home invasion.  After careful review, we affirm.

We summarize the relevant factual and procedural history as follows: In the early morning hours of August 21, 2017, Appellant and two co-conspirators, Brandon Eugene Davis and Raymond Anthony Daniels,[1]

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant's co-conspirators, Brandon Eugene Davis and Raymond Anthony Daniels, were also arrested in connection with the home invasion.  Davis proceeded to a jury trial as co-defendant with Appellant, and he was convicted of numerous crimes, including robbery, burglary, and conspiracy.  **See** *infra*. He received an aggregate sentence of 40 years to 80 years in prison.  Davis filed a direct appeal from his judgment of sentence, and this Court affirmed

executed an armed home invasion of the Bucks County residence of Emily and Jonatan Nadav. Present during the invasion were the Nadavs, their two daughters, ages twenty-five and twelve, and Mrs. Nadav's seventy-three-year-old mother. N.T., 1/28/19, at 35-37, 62-64, 77-78, 120-122.

Masked, gloved, and dressed in dark clothing, the men terrorized the Nadavs with handguns throughout the extended encounter—at times holding a gun to the head of each Nadav daughter—and threatened to shoot until the family revealed where it kept its safe containing money and jewelry. Before the trio absconded with over $300,000 in cash and personal property, they used their cellular telephones multiple times in the home to update one another on their progress. N.T. 1/28/19, at 48.

On November 16, 2017, the Newtown Township Police Department arrested and charged Appellant for his alleged role in the home invasion. On September 17, 2018, Appellant filed a counseled omnibus pre-trial motion seeking suppression of the police department's seizure of his cell phone records, including his cell site location records relating to the time that he and his co-conspirators were allegedly at the Nadav residence.

While Appellant conceded in his motion that the Commonwealth had obtained a November 3, 2017 court order supported by reasonable grounds

---

judgment of sentence in a published opinion, **Commonwealth v. Davis**, --- A.3d. ----, 2020 WL 6252080 (Pa.Super. filed 10/23/20). Daniels pled guilty to, *inter alia*, robbery, burglary, and conspiracy. He received an aggregate sentence of 40 years to 80 years in prison, and on direct appeal, this Court affirmed his judgment of sentence. **See Commonwealth v. Daniels**, No. 1618 EDA 2019 (Pa.Super. filed 4/7/20) (unpublished memorandum).

for disclosure of his cell phone records, he nevertheless argued the execution of the order constituted a search for which a warrant supported by probable cause was required. Omnibus Pre-trial Motion, 9/17/18, at 1 (citing *Carpenter v. U.S.*, ___ U.S. ____, 138 S.Ct. 2206 (2018) (holding requests for historical cell site records from wireless carriers constituted Fourth Amendment search requiring warrant). As police had obtained no warrant, Appellant asserted his records were seized unlawfully and, thus, subject to exclusion under the Fourth Amendment of the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution.

On November 5, 2018, the Commonwealth filed a motion in opposition to Appellant's omnibus pre-trial suppression motion. Therein, the Commonwealth admitted it had secured a court order directing the wireless carrier to provide the requested cell phone records, including the historical cell-site location records for Appellant's cellular telephone, from August 1, 2017, to October 31, 2017. Commonwealth's Motion in Opposition, filed 11/5/18, at 1-2. The Commonwealth averred it had sought the order pursuant to Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. § 5743, and the federal Stored Communications Act, 18 U.S.C. § 2703(d), which required only a showing of reasonable grounds to believe that

the requested records were relevant and material to the ongoing investigation.[2]

The Commonwealth acknowledged that, subsequent to the court's order, the U.S. Supreme Court handed down its *Carpenter* opinion holding police seizure of historical cell-site location records constitutes a search for which a warrant supported by probable cause is generally required. Commonwealth's Motion in Opposition at 2. Accordingly, in the wake of *Carpenter*, on July 5, 2018, the police secured a search warrant for the historical cell-site location records with regard to Appellant's cell phone.[3] *Id*.

The Commonwealth averred the search warrant was supported by probable cause and served upon T-Mobile/Metro PC, which released to the police the same cell phone records previously secured via the court order. *Id*. The Commonwealth argued the seizure of the cell phone records via the execution of the search warrant purged any taint associated with the pre-*Carpenter* seizure. *Id.* at 11. The Commonwealth reasoned that since the cell phone records would have been (and in fact were) ultimately discovered

_____

[2] We note that a Bucks County Assistant District Attorney filed a petition in support of the request for disclosure of the cell phone records pursuant to 18 Pa.C.S.A. § 5743 and 18 U.S.C. § 2703(d). In support thereof, the assistant district attorney attached an affidavit completed by Newtown Township Police Detective Chris Bush.

[3] Specifically, on July 3, 2018, Detective Bush completed an application for a search warrant for the disclosure of records for cell phone number (***) ***-3735, which was determined to be Appellant's cell phone number. Detective Bush attached to the application his affidavit of probable cause.

by lawful means, the inevitable discovery doctrine should insulate the records from exclusion. *Id.* at 11-12.

On November 7, 2018, and December 19, 2018, the trial court held hearings on Appellant's suppression motion. Initially, counsel for co-defendant Davis requested permission to amend the suppression motion to include the argument that the search warrant secured by the Commonwealth after *Carpenter* was not supported by probable cause, and thus, the cell phone records were fruits of the poisonous tree. N.T., 11/7/18, at 6. Appellant had raised this issue in his suppression motion previously. After the assistant district attorney indicated she had no objection to such an amendment, the trial court permitted co-defendant Davis to amend his suppression motion to raise and develop this issue. *Id*.

At the hearing, the defense offered no witnesses while the Commonwealth offered the testimony of Newtown Township Police Detective Chris Bush.[4] Detective Bush relevantly testified he prepared the affidavit for the police to secure the records for Appellant's cellular telephone via a court order, and a trial court judge signed the order. *Id.* at 36-37. As a result, the police received Appellant's cell phone records, including the historical cell-site location records. *Id.* at 37.

---

[4] The Commonwealth also offered the testimony of Detective Daniel Bartle; however, Detective Bartle's testimony was limited to an explanation of the order and search warrant with regard to Daniels' cell phone records.

Thereafter, subsequent to the *Carpenter* decision, the Commonwealth contacted Detective Bush and asked him to secure a search warrant for Appellant's cell phone records. *Id*. Accordingly, Detective Bush prepared an application and affidavit of probable cause for a search warrant by essentially cutting the information used in the prior affidavit for the court order and pasting it in the new affidavit of probable cause. *Id.* at 34, 38-39. Detective Bush, in preparing the affidavit of probable cause, did not rely on any of the cell phone records previously obtained from execution of the court order. *Id*. at 34. Once issued the search warrant, Detective Bush served it upon the wireless carrier, which provided the detective with the exact same records that the carrier had provided in response to the previous court order. *Id.* at 39, 47-48. Detective Bush later clarified the Commonwealth received the court order for Appellant's and co-defendants' cell phone records on November 3, 2017, and he received the search warrant on July 5, 2018. *Id.* at 68.

On cross-examination conducted by counsel for Appellant, Detective Bush testified his affidavit in support of the court order for Appellant's cell phone records and his subsequent affidavit of probable cause for the search warrant contained the same information with one exception. *Id.* at 52-53. Specifically, he unknowingly omitted from the affidavit of probable cause language pertaining to investigators' review of Appellant's and Daniels' cell phone records, which revealed that, at the time of the home invasion, their

cell device activities were captured on cell phone towers nearest the Nadav home.[5] *Id*.

On re-direct examination, Detective Bush testified that he prepared another application and affidavit of probable cause for a search warrant for cell phone content of Appellant's phone number. *Id*. at 77. In the affidavit, there is a reference to cell tower information indicating that co-defendant Daniels was in the location of the crime scene at the time of the home invasion. *Id.* at 78.

At the conclusion of the hearing, counsel for Appellant argued that once the police seized Appellant's cell phone records via a court order, the Commonwealth's subsequent seizure of those same records via a search warrant could not comply with the U.S. Supreme Court's mandate under *Carpenter*. *Id.* at 88-89. Counsel also argued that neither the affidavit for the court order nor the affidavit for the search warrant set forth sufficient grounds for probable cause. *Id.* at 89.

---

[5] Specifically, the following language was included in the affidavit for the court order, but was omitted from the affidavit of probable cause for the search warrant:

> Daniels' cell device activities were captured on cell phone towers in the vicinity of [the Nadav home]….Jones' cell device activities were captured on cell phone towers in the vicinity of [the Nadav home].

Exhibit CS-5, Order for disclosure of cell phone records, affidavit, filed 11/3/17.

By order entered on January 14, 2019, the suppression court denied Appellant's motion to suppress the cell phone records, including the historical cell-site location records for Appellant's cell phone. Specifically, the suppression court indicated the following:

10. On November 3, 2017, Court Order No. MD-3215-2017 was signed by the Honorable Wallace H. Bateman, Jr. of the Bucks County Court of Common Pleas for all certified account phone records[6] of (***)***-4478 for the time period between August 1, 2017, through [October] 3[1], 2017.

11. On July 5, 2018, Search Warrant #CA52-6343 was issued [by] the Honorable Wallace H. Bateman, Jr. of the Bucks County Court of Common Pleas for the seizure of all certified account phone records of (***)***-4478.

12. The Affidavits in support of both the Court Order and the Search Warrant for cell phone number (***)***-4478 are nearly identical.

13. Detective Chris Bush, a sworn Newtown Township Police Department Detective, executed Search Warrant #AA52-6343 and obtained all certified account phone records of (***)***-4478.

14. When Detectives Bartle and Bush sought the aforesaid Court Orders for the cell-site data, Pennsylvania law, [18 Pa.C.S.A. § 57434(d)], required the application to be supported by specific and articulable facts showing reasonable grounds to believe contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.

15. On June 22, 2018, the Supreme Court of the United States issued **Carpenter v. United States**, 138 S.Ct. 2206 (2018), holding the Government must generally obtain a search warrant supported by probable cause before acquiring cell-site data.

---

[6] The suppression court indicated that "certified account phone records" includes "cell-site data." Suppression Court Order, filed 1/17/19, at 2.

16. ***Carpenter v. United States***, 138 S.Ct. 2206 (2018) was decided after the…aforementioned Court Order[] [was] signed.

**CONCLUSIONS OF LAW FOR DEFENDANT['S] MOTION TO SUPPRESS CELL PHONE RECORDS INCLUDING HISTORICAL CELL-[S]ITE DATA**

1. Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that the items sought will be located in the area to be searched.

2. [The] Court Order[] [was] sought in compliance with the law, as it existed at the time.

\*\*\*

5. Court Order No. MD-3215-2017 to seize the aforementioned information from cell phone number (***)***-4478 was supported by probable cause.

6. The subsequent issuance and execution of the aforesaid Search Warrants cured any defects with the aforesaid Court Orders, in light of ***Carpenter v. United States***, 138 S.Ct. 2206 (2018).

7. The issuance of the…aforesaid Search Warrant[] [was] not tainted by illegality and was not fruit of the poisonous tree.

8. The actions of law enforcement associated with the…aforesaid Search Warrant[] were legal and proper in all respects.

Suppression Court Order, filed 1/17/19, at 3-4 (bold in original) (footnote omitted) (footnote added).

Thereafter, the matter proceeded to a jury trial at which Appellant was represented by counsel. With regard to the evidence offered at trial, including the historical cell-site location evidence linking Appellant to the home invasion, the trial court in its Pa.R.A.P. 1925(a) opinion has provided an accurate summary, as follows:

The evidence…established that, at the time of the events on trial, all three [co-conspirators] resided in Philadelphia.

- 9 -

Information regarding telephone numbers, message content, photographs[,] and contact information extracted from all three cellular telephones established that the [co-conspirators] were using those cellular telephones at the time of the events on trial. [Appellant] Jones was the individual who used the cellular telephone identified at trial as the "Jones phone." [Co-conspirator] Davis was the individual who used the cellular telephone identified at trial as the "Davis phone." [Co-conspirator] Daniels was the individual who used the cellular telephone identified at trial as the "Daniels phone." The [co-conspirators] were also connected to those cellular telephones through historical cell-site location information.

Analysis of the call detail records and the historical cell-site location information obtained from the wireless service providers for those cellular telephones established that, just days before the home invasion, all three [co-conspirators] traveled from North Philadelphia to the victims' residence, where they remained for at least thirty minutes before returning to North Philadelphia. Specifically, the records established that, shortly before midnight on August 14, 2017[,] all three cellular telephones accessed cell towers located in North Philadelphia. At midnight on August 15, 2017, all three cellular telephones accessed the cell tower located closest to the victims' residence. That cell tower was located less than a third of a mile from the victims' residence and is visible from that location. The cellular telephones continued to be used in the vicinity of the victims' residence for at least thirty minutes. By 1:20 a.m., all three cellular telephones were accessing a cell tower in North Philadelphia.

Analysis of the cell detail records and the historical cell-site location information also placed the three [co-conspirators] at the crime scene at the time of the home invasion. Specifically, the records established that, shortly before midnight on August 20, 2017, all three cellular telephones accessed a cell tower located in North Philadelphia. At 1:59 a.m. on August 21, 2017, a call was placed from [Co-conspirator] Davis' cellular telephone to [Appellant] Jones' cellular telephone. The connection lasted for fifteen minutes and fifty-eight seconds. A second call was placed from Davis' cellular telephone to [Appellant] Jones' cellular telephone at 2:15 a.m., approximately one minute after the first call terminated. The connection lasted for twelve minutes and fifty-one seconds. Both calls were processed through the cell tower located in the victims' neighborhood. Between 1:59 a.m.

and 2:29 a.m., all three cellular telephones were utilized to communicate with each other, each call again accessing [the cell tower] located less than a third of a mile from the victims' residence. GPS location data extracted from Davis' cellular telephone place that cellular telephone [by the Nadavs' residence] at 12:05:40 a.m. By 2:54 a.m., all three cellular telephones were accessing a cell tower in North Philadelphia.

At 2:54:49 a.m. that same date, the following text was sent from Davis' cell [*sic*] cellular telephone, "Nah, I'm with Juice. We just came back from Yoni crib. Give me a second. We driving now." N.T., 1/28/19, at 201[.] Cellular telephone text message content and other evidence established that [Appellant] Jones goes by the name "Juice."

Real time cellular telephone location data (pinging) was utilized in an attempt to locate the cellular telephone stolen during the home invasion. The last location data available indicated that the telephone was in the vicinity of [****] Tacony Street in Philadelphia. That address is located adjacent to Interstate 95, between the crime scene and the residences of [Appellant] Jones and Davis. Investigators searched the area but were unable to recover the cellular telephone.

At approximately 3:30 a.m., [which was] approximately an hour after the home invasion, Daniels showed his girlfriend, Marlon Burton, the wallet and credit cards that were taken from the Nadav residence. Shortly thereafter, Daniels and Burton made purchases at five separate locations utilizing those credit cards. Historical cell-site location information confirmed that Daniels and Burton traveled to the five locations where the credit cards were used. A blank check that was found in the wallet was made payable to Burton in the amount of $5,500 and was later deposited into Burton's account.

Call detail records also established that shortly after 5[:00] a.m. on August 21, 2017, within hours of the home invasion, [the co-conspirators, including Appellant,] exchanged text messages reveling in the value of the property they were able to obtain during the home invasion, referring to a Rolex watch, a firearm, Euro currency, a Chanel bag, and a Louis Vuitton bag. [Appellant] Jones started the exchange when he text messaged Davis and Daniels, "Yo, Boy! You still up???" and accompanied the text with a money bag emoji and a flexing bicep emoji. During one text

- 11 -

message exchange, Davis advised [Appellant] Jones, "We deserve this shit, Juice. We been through too much." N.T., 1/28/19, at 223. Davis later sent a text message stating, "I'm selling this Rollie." N.T., 1/28/19, at 201.

Information extracted from Davis' cellular telephone and Daniels' cellular telephone established that twenty calls were made between the two cellular telephones on August 20, 2017[,] through August 21, 2017.

On August 24, 2017, police recovered a cellular telephone from [Appellant] Jones and $3,579....A photograph of a handgun extracted from Davis' cellular telephone was identified as the handgun that was taken from the victims' residence. [Appellant] Jones' DNA was taken and compared to DNA found on a partially smoked cigar in a pack of cigarettes found on the street outside the crime scene. [Appellant] Jones' DNA matched the DNA found on the cigar.

A search warrant was executed at Daniels' residence....During that search[,] police recovered Louis Vuitton luggage belonging to the Nadavs and a 9-millimeter firearm.

In November of 2017, Daniels sent a text message to Davis advising him that, "They got your number. They just don't know who you are." Daniels further advised Davis, "That's the only way they can get you and Juice...." During this exchange, Daniels instructed Davis how to change his cell [*sic*] cellular telephone number using an "app." Davis advised Daniels, "I'm trying to change it now."

Trial Court Opinion, filed 2/5/20, at 7-11 (citations to record and footnotes omitted).

At the conclusion of trial, a jury convicted Appellant and Davis of the offenses indicated *supra*.[7] On May 23, 2019, Appellant proceeded to a

---

[7] On January 31, 2019, Appellant and Davis were each convicted of five counts of Robbery (threatening another with/intentionally putting another in fear of serious bodily injury), 18 Pa.C.S. § 3701(a)(1)(ii), felonies of the first degree;

sentencing hearing, at the conclusion of which the trial court sentenced him to an aggregate sentence of 70 to 140 years' incarceration. On May 31, 2019, Appellant filed post-sentence motions for judgment of acquittal, a new trial, and reconsideration of sentence. On September 13, 2019, following a hearing, Appellant's motion for reconsideration of sentence was denied. By order dated October 18, 2019, Appellant's remaining post-sentence motions were denied.

On November 14, 2019, Appellant filed a timely Notice of Appeal. In his brief, Appellant sets forth the following issue for this Court's consideration:

> Are the Pennsylvania and United States Constitutional requirements for a search warrant issued only after a showing and finding of probable cause met when, after the evidence sought has already been seized pursuant to a court order not issued pursuant

_____

five counts of Robbery (threatening to commit a felony of the first or second degree), 18 Pa.C.S. § 3701(a)(1)(iii), felonies of the first degree; Burglary (overnight accommodation, person present, and commits, attempts to commit, or threatens to commit a bodily injury crime), 18 Pa.C.S. § 903, a felony of the first degree; Criminal Conspiracy to commit Robbery and Burglary, 18 Pa.C.S. § 903; Criminal Conspiracy to commit Burglary, 18 Pa.C.S. § 903; five counts of Simple Assault by Physical Menace, 18 Pa.C.S. § 2701(a)(3), misdemeanors of the second degree; five counts of Recklessly Endangering Another Person, 18 Pa.C.S. § 2705, misdemeanors of the second degree; False Imprisonment of a Minor (by a person not a parent) (C.N.), 18 Pa.C.S. §2903(b), a felony of the second degree; four counts of False Imprisonment, 18 Pa.C.S. § 2903(a) (Jonatan Nadav and/or Emily Nadav and/or Elle Nadav and/or Manya Guravich), misdemeanors of the second degree; Unlawful Restraint of a Minor (by a person not a parent/risk of serious bodily injury) (C.N.), 18 Pa.C.S. § 2902(b)(1), a felony of the second degree; four counts of Unlawful Restraint (Jonatan Nadav and/or Emily Nadav and/or Elle Nadav and/or Manya Guravich), 18 Pa.C.S. § 2902(a), a misdemeanor of the second degree; Theft by Unlawful Taking (firearm, value of the property taken exceeded $2,000), 18 Pa.C.S. § 3923(a)(7), a felony of the second degree; and Criminal Coercion (threat to commit a felony/act with felonious intent), 18 Pa.C.S. § 2906(a)(1), a misdemeanor of the first degree.

to an affidavit of probable cause and absent a finding of probable cause, and the evidence so seized used to support two affidavits of probable cause, the Commonwealth ten months later obtains a search warrant for the evidence it unlawfully seized by "cutting and pasting" the information from its original unlawful court order into an affidavit of probable cause and then using the ensuing warrant to seize evidence it already obtained unlawfully?

Appellant's Brief at 5.

In reviewing Appellant's suppression claim, we are mindful that:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. Yandamuri***, 639 Pa. 100, 159 A.3d 503, 516 (2017) (citations omitted).

After careful review of the record, party briefs, and controlling authority, we discern no merit to Appellant's issue, as this Court recently considered the identical challenge raised in co-defendant Brandon Davis' direct appeal and dismissed it as meritless.

Specifically, in the published opinion ***Commonwealth v. Davis***, --- A.3d ----, 2020 WL 6252080 (Pa.Super. filed 10/23/20), this Court acknowledged that the initial seizure of the co-conspirators' cell-site location records upon the less burdensome "reasonable grounds" standard applicable

under 18 Pa.C.S.A. § 5743 and 18 U.S.C.A. § 2703 was rendered unlawful in the wake of **Carpenter**. We reasoned, however, that the Commonwealth's post-**Carpenter** procedure of obtaining new, probable cause-based search warrants based solely on information available to it prior to the initial seizure of records purged any taint stemming from the initial seizure. In this vein, we determined the Commonwealth had established by a preponderance of the evidence that the illegally obtained evidence inevitably would have been discovered by lawful means, making such evidence admissible. **Id.** at **9-10.

Finally, we concluded that probable cause supported the search warrants, as Detective Bush's affidavit set forth a totality of circumstances creating the fair probability[8] that evidence of the alleged co-conspirators' crimes against the Nadavs would be found upon examination of the cell phone records sought. Specifically, the affidavit identified one Marlon Burton as the woman whom a bank's video surveillance depicted depositing Mr. Nadav's stolen bank check the following morning after the home invasion. Once in custody, Ms. Burton explained she was the girlfriend of co-conspirator Daniels, who had given her both the check and Mr. Nadav's credit cards.

Burton provided authorities with Daniels' cell phone number, which was determined to be in contact with Appellant's cell phone during several

---

[8] **Davis**, at *14 (citing **Illinois v. Gates**, 462 U.S. 213, 103 S.Ct. 2317 (1983) (expressing "totality of circumstances" test for determining whether a search warrant request is supported by probable cause; advocating commonsense, rather than hypertechnical, interpretations of affidavits)).

exchanges made during the early morning hours of the Nadav robbery. In turn, Appellant's cell phone was used in several exchanges with co-conspirator Davis' cell phone during the same time.

In view of such averments within Detective Bush's affidavit, we observed:

> As indicated in the affidavit of probable cause, during the home invasion the victims observed three perpetrators who used their cell phones to communicate with each other. After the police determined Marlon Burton had used credit cards stolen from the Nadav residence, Burton admitted to the police that Daniels gave her the credit cards during the early morning hours shortly after the home invasion had occurred.
>
> An examination of Daniels' cell phone records revealed that, during the home invasion, Daniels used his cell phone to communicate with Jones, who in turn used his cell phone to communicate with (***) ***-4478. A common sense reading of the affidavit reveals there was a fair probability that the owner of cell phone (***) ***-4478 participated in the home invasion and/or would have information in connection with the identity of the perpetrators or recovery of the stolen items. [*Gates*, *supra*].
>
> . . .
>
> Accordingly, we conclude the search warrant was supported by probable cause, and therefore, the trial court properly denied [Davis'] motion to suppress the historical cell-site location information pertaining to his cell phone.

*Davis*, at *13.

Our decision in *Davis* is dispositive of the issue presently before us, as co-conspirators Davis and Appellant raised identical challenges to the validity of the post-*Carpenter* search warrant and the adequacy of its supporting

affidavit of probable cause by which they were equally implicated. Accordingly, Appellant is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/20